1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | |
|---|---|
| CHRIS SALGADO,<br><br>   Petitioner,<br><br> vs.<br><br>A. P. KANE, Warden,<br><br>   Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. C 05-2681 JSW (PR)

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

17

## INTRODUCTION

18   Petitioner, a prisoner of the State of California, currently incarcerated at the

19 Correctional Training Facility in Soledad, California, filed this *pro se* habeas corpus

20 petition pursuant to 28 U.S.C. § 2254 challenging the Board of Prison Terms' ("BPT")

21 denial of parole during parole suitability proceedings in 2003.  This Court ordered

22 Respondent to show cause why a writ should not issue.  Respondent filed an answer,

23 memorandum and exhibits in support thereof, and Petitioner filed a traverse.  For the

24 reasons stated below, the petition is denied on the merits.

25 ## BACKGROUND

26   Petitioner was convicted of second degree murder in Los Angeles County

27 Superior Court in 1983 and was sentenced to a term of fifteen years-to-life in state

28 prison.  In this habeas action, Petitioner does not challenge his conviction, but instead

alleges that his due process rights were violated by the denial of parole during his subsequent parole suitability hearing on December 18, 2003.  Petitioner received a one-year denial of parole at that proceeding.

At the December 18, 2003 hearing, Petitioner appeared with counsel before a BPT panel for a subsequent parole consideration hearing.  At the hearing, the Board relied upon the Statement of Facts in the BPT's November 2002 report regarding Petitioner's commitment offense.  Petitioner testified that the statement was an accurate reflection of what happened, and the Court includes that summary here:

> On April 21, 1982, Salgado shot and killed Ruben Juarez.  Juarez had been living at the same address as Salgado and Salgado's sister, Kelly Salgado. Ruben Juarez and Kelly Salgado were in a common-law relationship.  On the evening of the offense, Kelly Salgado and Juarez got into a heated argument where Juarez threatened to depart to Bakersfield and take their six-week old child with him.  Kelly Salgado's cousin, Gilbert Fernandez, became involved in a verbal exchange with Juarez.  Salgado joined the argument.  Kelly Salgado asked all of the men to take the argument outside.  At which time Salgado retrieved a sawed-off rifle from the residence, approached and shot Juarez multiple times in the chest and head areas.  Approximately 20 minutes later, Fernandez and Salgado were located at a nearby donut shop and arrested.

(*See* Respondent's Answer, Ex. 2 at 6:15-7:16).

The BPT found that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety.  The presiding Commissioner explained that, in deciding to deny parole, the panel considered Petitioner's commitment offense, prior criminal and social history, and his programming and behavior since commitment, including progress made and his parole plans.

Petitioner challenged the BPT's  December 18, 2003 decision in the state superior, appellate and supreme courts.  The Los Angeles County Superior Court issued the last reasoned opinion denying Petitioner's claims.  After the Supreme Court of California summarily denied his final state habeas petition on April 27, 2005, Petitioner filed the instant federal petition for a writ of habeas corpus.

2

**DISCUSSION**

A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d). Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id.* at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

B.    Legal Claims and Analysis

Petitioner seeks federal habeas corpus relief from the BPT's December 18, 2003

3

decision finding him not suitable for parole on the ground that the decision does not comport with due process. Petitioner claims that the BPT's decision is not supported by some evidence in the record having an indicia of reliability that Petitioner is currently a threat or unreasonable risk to society. Petitioner also claims that the BPT possesses an "Anti-Parole Policy" which is systemically biased, in violation of his constitutional rights.

        1.     <u>The BPT Decision</u>

California's parole scheme provides that the BPT "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). In making this determination, the BPT considers various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and after the crime. *See* Cal. Code Regs. tit. 15, § 2402(b) – (d).

The record shows that the BPT panel afforded Petitioner and his counsel an opportunity to speak and present their case at the hearing, gave them time to review Petitioner's central file, allowed them to present relevant documents and provided them with a reasoned decision in denying parole. The panel concluded that Petitioner "is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." December 18, 2003. Hearing Transcript at 44 (Answer Ex. 2 at 44:10-12). The panel explained that it found that the commitment offense "was clearly carried out in cruel fashion, which shows a lack of regard for the life and suffering of others." *Id.* at 44:15-18. The panel believed that Petitioner's motive for his crime was trivial in relation to its seriousness because Petitioner shot Juarez multiple times in the chest and the head, while he was attempting in some way to

4

protect his sister, who had been in a verbal and physical argument with Juarez. *Id.* at 45:11-14.  The panel also found that Petitioner had an unstable social history and prior criminality. *Id.* at 45:14-26.  Petitioner's prior juvenile record includes possession of a switchblade, possession of a controlled substance, burglary, malicious mischief, minor in possession of alcoholic, burglary and grand theft. *Id.* at 45:15-19.  He drank alcohol as a minor, smoked marijuana and while affiliated with a gang, participated in a few fist fights. *Id.* at 45:23-25.

In prison, Petitioner had also received three disciplinary rules violation reports in prison, the last of which was in 1989 for using force of violence.  He also received 23 disciplinary "chronos," the last of which was in 1991.  The BPT panel found that Petitioner failed to take full advantage of self help programs to deal with his drug and alcohol abuse.  While the psychological test instruments administered indicated that Petitioner showed a low risk for violent behavior relative to the Level II inmate and that there was no indication of sociopathy, the report mentioned Petitioners history of alcohol abuse and suggested continued participation in Alcoholics Anonymous (AA) and Narcotics Anonymous (NA)  programs during his incarceration and as a contingency upon parole. *Id.* at 34:25-35:16.  Petitioner has been attending AA meetings for the past 7-8 years, but he did not know and work on the steps of the program.  *Id.* at 48:6-8.  The panel found that Petitioner needed to take more initiative in participating in these programs so that he could continue to develop skills that will allow him to deal with stress in a nondestructive manner. *Id.* at 47:1-4.

The panel commended Petitioner for all of the positive things he had done while in prison; he remained disciplinary free for the last 13 years, obtained his GED, maintained a high reading score, completed welding and machine shop and was considered employable in auto shop, and he regularly participated in AA.  He was commended for his work as a stationary engineer and having marketable skills.  The panel also found that Petitioner's parole plans were appropriate. *Id.* at 47:6-18.

The panel found, however, that these "positive aspects of his behavior, do not outweigh his factors for unsuitability." *Id.* at 41:13-15. The panel recommended that Petitioner remain disciplinary-free, continue to participate in self-help programs, show initiative when participating in such programs, and try to get into an anger management program and if one is not available, watch a video series on anger management. *Id.* at 48:4-26. The panel informed Petitioner that they wanted him to show them that he was serious about sobriety, remaining disciplinary-free, and about not being a violent.

The state superior court reviewed the decision of the BPT, and denied Petitioner's habeas petition. (Respondent's Answer Ex. 5). The court found that Petitioner's motive was not very trivial and that the record did not support that there was human suffering. (*Id.*) The court did find because Petitioner shot the victim multiple times, however, the circumstances of the commitment offense were more than the minimum necessary to sustain a conviction for second-degree murder. (*Id.*) Hence the commitment offense was enough evidence to find that Petitioner was unsuitable for parole. *Id.* The court found that Petitioner's prior convictions did not include occasions on which the Petitioner "inflicted of attempted to inflict serious injury on a victim," and thus his criminal history did not weigh against granting parole. *See* Cal. Code Regs., tit. 15, §2402(c)(2). However, the court did find that there was "some evidence" that Petitioner had an unstable social history specifically because of his gang activity, and that there was "some evidence" that Petitioner had not fully availed himself of self help programs. (Answer Ex. 5.) The California Court of Appeal summarily denied Petitioner's habeas petition and the California Supreme summarily denied his petition for review.

### 3. The Federal Right to Due Process

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections. *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir.

6

2006); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002).  The determination does not depend on whether a parole release date has ever been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."  *Biggs v. Terhune*, 334 F.3d 910, 914-15 (9th Cir. 2003).

Petitioner's due process rights require that "some evidence" support the parole board's decision finding him unsuitable for parole.  *Sass*, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); *Biggs*, 334 F.3d at 915 (same); *McQuillion*, 306 F.2d at 904 (same).  The Ninth Circuit has recently clarified that "California courts have made clear that the 'findings that are necessary to deem a prisoner unsuitable for parole' are not that a particular factor or factors indicating unsuitability exist, but that a prisoner's release will unreasonably endanger public safety."  *Hayward v. Marshall,* 512 F. 3d 536, 543 (9th Cir. 2008) (quoting *Irons v. Carey*, 505 F.3d 846, 850 (9th. Cir. 2007)).  The relevant criteria under which the BPT ordinarily determines whether a prisoner is too dangerous to be found suitable for parole are set forth in the California Code of Regulations at Cal. Code Regs. tit. 15, § 2402.  *Id.*  This Court must therefore determine whether the state court decision finding the BPT's decision was supported by "some evidence the parolee's release unreasonably endangers public safety."  *Id.*  (citation omitted.)

The "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPT] were without support or otherwise arbitrary."  *Hill*, 472 U.S. at 457.  Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  *Id.* at 455-56 (quoted in *Sass*, 461 F.3d at 1128).  The inquiry under *Hill* is simply "whether there is *any* evidence in the record that could support the conclusion reached by the [BPT]."  *Id.*  Due process

also requires that the evidence underlying the parole board's decision have some indicia of reliability. *Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904. Relevant in this inquiry "is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board." *Morales v. California Dep't of Corrections*, 16 F.3d 1001, 1005 (9th Cir. 1994), *rev'd on other grounds*, 514 U.S. 499 (1995). In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005).

This Court agrees with the BPT panel and the state courts that the commitment offense was carried out in a cruel manner insofar as Petitioner shot the victim multiple times in the chest and head from close range with a sawed-off rifle. Petitioner's criminal history was relatively minor insofar as his prior convictions were not violent, and were committed while he was a juvenile. There was other indicia of an unstable social history, however, in that Petitioner was affiliated with a gang, had participated in fist fights and had abused alcohol and drugs as a minor. The Ninth Circuit has indicated, however, that at some point the BPT cannot, consistently with the requirements of due process, deny parole based solely on these unchanging, pre-conviction facts of the commitment offense and the inmate's criminal and social history. *See Hayward*, 512 F.3d at 545-57 (citing *Biggs,* 334 F. 3d at 916); *see, e.g., id.* (finding denial of parole violated due process where inmate had served 23 years of a 15-to-life sentence); *cf., e.g., Irons*, 479 F.3d at 661 (upholding reliance upon commitment offense to deny parole at fifth parole hearing after petitioner had served 16 years in prison, which was less than the minimum term); *Sass*, 461 F.3d at 1129 (upholding denial of parole based on commitment offense for second and third parole hearings after petitioner had served 11 and 12 years in prison)..

Here, the BPT's 2003 decision was the ninth denial of parole, and at the time Petitioner had served 20 years in prison on a sentence of 15 years to life. Thus, were

these unchanging, pre-conviction facts the only evidence supporting the BPT's decision here, the Court would have serious concerns that, as in *Hayward*, the decision would violate due process. However, in this case, unlike in *Hayward*, there was additional evidence of Petitioner's post-conviction behavior that Petitioner would pose a threat to public safety if released.[1]  First, Petitioner's disciplinary history in prison, while old, was very substantial: he had 23 disciplinary chronos, and three rules violation reports, including one for the use of force. Even though Petitioner had remained free of discipline for twelve years, the BPT could reasonably view the large number of disciplinary measures as unusual and indicating a greater risk than the typical inmate that Petitioner presented a threat to public safety if released.[2]  In addition, Petitioner had a history of drug and alcohol abuse, and while he had participated in drug and alcohol recovery programs, at the parole hearing he displayed an evident lack of knowledge and understanding of such basic aspects of the programs as the steps towards recovery. The panel could reasonably deduce that Petitioner's participation had not been serious, or particularly beneficial to him. The psychologist certainly thought so, recommending that Petitioner participate further in substance abuse programs.

In sum, as there was evidence, beyond the "unchanging" factors of his commitment offense and criminal and social history, that Petitioner continued to pose a threat to public safety, the instant case does not implicate the concerns voiced by the Ninth Circuit in *Hayward*, *Biggs* and their progeny. Moreover, while Petitioner had served substantially more than his minimum term at the time of the BPT hearing, the

[1]This case further differs from *Hayward* because in *Hayward* the petitioner had been granted parole twice by the BPT, and twice the Governor had overturned that decision; the instant case does not involve the Governor overturning the grant of parole by the BPT.  512 F.3d at 538.

[2]By contrast, in *Hayward*, there is no indication that the petitioner's disciplinary record was as voluminous as petitioner's.  *Cf. Hayward*, 512 F.3d at 538, 544-45.

record contains sufficient evidence of Petitioner's continuing threat to public safety that the state courts cannot be said to have unreasonably applied federal law in finding the denial of parole to be supported by "some evidence." Accordingly, habeas relief is not available to Petitioner on his due process claim.

     5.    "Anti-Parole Policy"

Petitioner further argues that the BPT possesses an "Anti-Parole Policy" that is biased and violates his constitutional rights. None of the state courts to consider Petitioner's claims explicitly ruled on this claim. Therefore, this Court now conducts "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. *Plascencia v. Alameda*, 467 F.3d 1190, 1198 (9th Cir. 2006). Petitioner has set forth no evidentiary support for his bias claim. But even if he had, there is no evidence in the record indicating that this alleged bias affected the BPT's decision or served as the basis for denying Petitioner parole. To the contrary, the transcript from Petitioner's December 18, 2003 parole hearing demonstrates that he received an individualized assessment of his potential parole suitability. Petitioner's reliance on the high percentage of parole denials for life inmates provides no proof of the BPT's alleged bias against parole. *Cf. California Dept. of Corrections v. Morales*, 514 U.S. 499, 510-11 (1995) (citing that 90 percent of all California inmates are found unsuitable for parole as evidence that deferring annual parole suitability hearings was lawful and reasonable). The state courts' rejection of Petitioner's claims cannot be said to be objectively unreasonable. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 409.

//

//

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the reasons set forth above, the petition for a writ of habeas corpus is

DENIED.  The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED:  May 19, 2008

_____
JEFFREY S. WHITE
United States District Judge

11

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SALGADO,

              Plaintiff,

  v.

KANE et al,

              Defendant.

_____/

Case Number: CV05-02681 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 19, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Chris Salgado C-60052
Correctional Training Facility
P.O. Box 689
B-Wing-339
Soledad, CA 93960-0689

Dated: May 19, 2008

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk